IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EKENE SAMPSON AKPURU,<br><br>Petitioner,<br><br>vs.<br><br>LEONARD ODDO,<br><br>Respondent. | No. 3:26-cv-47<br><br>District Judge Stephanie L. Haines<br>Magistrate Judge Peter E. Ormsby |

**REPORT AND RECOMMENDATION**

I. **Recommendation**

Petitioner Ekene Sampson Akpuru is a native and citizen of Nigeria who is currently in the custody of the Department of Homeland Security (DHS) at Moshannon Valley Processing Facility (Moshannon). Pending before the Court are his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and his "Emergency Motion for a . . . Preliminary Injunction," both of which challenge the lawfulness of his immigration detention. ECF Nos. 3, 4. Due to the unusual posture of this case (described below), this report addresses only the preliminary injunction motion.

In seeking injunctive relief, Petitioner claims DHS violated its own regulations by arresting him in December 2025 and thereby revoking his prior release on recognizance in November 2021. As explained in the report that follows, because Petitioner is mistaken on the regulations that apply and has otherwise failed to show a likelihood of success on this claim, it is respectfully recommended that his preliminary injunction motion be denied. It is further recommended that this case remain referred to the undersigned to address the merits of the

Petition in a separate report and recommendation that takes into account additional briefing and information expected from the parties.

II. **Report**

**A. Background**

To give context to Petitioner's preliminary injunction motion, some factual and procedural background will be helpful. As noted, Petitioner is a native and citizen of Nigeria. On November 23, 2013, Petitioner entered the United States on a B-1 business visitor visa that allowed him to remain in the country for one month, until December 22, 2013. ECF No. 12-2 at 2. He never left.

About seven years later, Petitioner came to the attention of DHS after he was convicted in Arizona on several criminal fraud charges.[1] *See* ECF No. 12-2 at 5. After serving his sentence, DHS officers with U.S. Immigration and Customs Enforcement (ICE) took Petitioner into immigration custody on November 16, 2021. ECF No. 12 at 4. A few days later, on November 20, 2021, Petitioner was released on an "order of recognizance."[2] *See* ECF No. 12-3. On

[1] In Arizona, Petitioner was convicted on three counts of Fraudulent Schemes and Artifices. ECF No. 12-1 at 3; ECF No. 12-2 at 5. He was sentenced to a term of 5 years imprisonment and released from prison after serving 1320 days (over three and a half years). *Id*.

[2] The precise nature of Petitioner's November 2021 release is unclear because the release order is not in the record. An immigration printout of Petitioner's "Detention History" shows that on November 20, 2021, he was released on an "Order of recognizance." ECF No. 12-3. Petitioner's release was described somewhat differently in a notice from ICE to EOIR (Executive Office for Immigration Review) dated February 19, 2022, which noted he had been released from ICE custody on an "Order of Supervision or Own Recognizance (Form I-220A)." ECF No. 12-6. Respondent adds another wrinkle, stating that ICE released Petitioner "due to COVID." ECF No. 12 at 4. For simplicity, in this report Petitioner's release will be referred to as a release on recognizance.

November 30, 2021, an ICE officer issued Petitioner a Notice to Appear for immigration removal proceedings. ECF No. 12-2 at 2.

At some point after his November 2021 release from immigration custody, Petitioner moved to Pennsylvania. He married a woman he had met soon after entering the United States, and they have two children. *See* ECF No. 3 at 2-3. Petitioner claims he has a successful transportation business, which he owns with his wife. *Id*. at 3. He also insists that, in the years since his release from immigration custody, he has been in "full compliance" with the terms of his release, including keeping his address updated and attending his check-in appointments. *Id*.

However, on December 11, 2025, Philadelphia police arrested Petitioner and charged him with "Defiant Trespass" and "Criminal Mischief." ECF No. 12-1 at 3. A little over a week later, on December 23, 2025, ICE deportation officers arrested Petitioner at his home. *Id*. According to Petitioner, the officers gave no "notice" or "justification" for his arrest. ECF No. 3 at 3. According to the contemporaneous immigration arrest report (Form I-213), the officers informed Petitioner they had a warrant for his arrest based on immigration violations. ECF No. 12-1 at 3. The report states that due to his then-recent arrest by Philadelphia police, he was being taken back into immigration custody and processed as a "custody redetermination." *Id*. at 4.

The ICE officers detained Petitioner at Moshannon. His removal proceedings moved forward, and on February 12, 2026, an immigration judge ordered his removal to Nigeria. ECF No. 12-5. Petitioner timely appealed that decision to the Board of Immigration Appeals (BIA), and his appeal remains pending.

Petitioner filed this habeas action pro se on January 13, 2026, while he was being held at Moshannon. ECF No. 3 at 1; ECF No. 12 at 4. Along with his Petition, he filed an an "Emergency Motion for a Temporary Restraining Order and/or Preliminary Injunction." ECF

Nos. 3, 4. By Order dated January 14, 2026, presiding District Judge Haines denied a TRO and referred all remaining matters to the assigned magistrate judge.[3] ECF No. 5.

Petitioner's custody status soon changed as a result of a writ issued by a state court judge. ECF No. 12-4. The writ sought Petitioner's appearance in state court to address the charges pending from his December 2025 arrest by Philadelphia police. *Id*. The writ specified that Petitioner would be promptly returned to Moshannon at the conclusion of his criminal proceedings. *Id*. Pursuant to the writ, ICE transferred Petitioner state custody on March 2, 2026. ECF No. 12-4. On April 27, 2026, while Petitioner was still in state custody, Respondent filed his response to the Petition.[4] ECF No. 12.

According to Petitioner's recent filing on August 27, 2026, his state criminal proceedings have concluded,[5] and he is now back at Moshannon. ECF No. 17. Petitioner states that he has not received a copy of Respondent's response to his Petition, presumably because he was in state custody when it was filed. *Id*. Petitioner thus requested that a copy of the response be sent to him and that he be given time to file a reply brief addressing Respondent's arguments. The undersigned granted these requests by order dated September 3, 2026. ECF No. 18. Because Petitioner has not had the opportunity to review and reply to Respondent's arguments regarding

---

[3] Pointing out that Petitioner sought immediate release, Judge Haines determined that such mandatory, affirmative relief went beyond the limited nature of a TRO. ECF No. 5 at 2.

[4] Because Petitioner was then temporarily no longer in immigration custody, Respondent argued (among other things) that the Petition should be dismissed as moot. ECF No. 12 at 6-7. Because Petitioner has since been returned to immigration custody at Moshannon, Respondent's mootness argument is now moot.

[5] The record does not reflect how Petitioner's state criminal proceedings were resolved.

his Petition, this Report addresses only his request for a preliminary injunction. The merits of the Petition will be addressed in a later report.

**B. Discussion**

1. <u>Preliminary Injunction Standard</u>

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed.1995)). It follows that such relief "should be granted only in limited circumstances." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 391 (3d Cir. 2021).

To obtain relief, a movant "seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). The first two factors are the "most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). They are "essential elements" in that "the failure of the moving party to make either of those threshold showings is fatal to the issuance of a preliminary injunction." *Transcon. Gas Pipe Line Co., LLC v. Pennsylvania Env't Hearing Bd*., 108 F.4th 144, 150 (3d Cir. 2024). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Here, Petitioner has failed to meet the first gateway factor.

2. Likelihood of Success on the Merits

In seeking a preliminary injunction, Petitioner claims that the revocation of his November 2021 release on recognizance was unlawful. *See* ECF 4 at 3-4. Specifically, he contends he "was never provided an opportunity to respond to the reasons [his] release was revoked let alone provided notice of such reasons. Such actions clearly violate ICE Regulations." *Id*. at 4 (citing 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3)). According to Petitioner, he is likely to succeed on the merits of his claim because "Respondents failed to comply with their own regulations." *Id*. at 3. He cites cases in support of that conclusion, including *Hoac v. Becerra*, No. 2:25-Civ-1740, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025), and *Truong v. Noem*, No. 25-Civ-2597, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025). *Id*. at 4.

However, Petitioner has not shown a likelihood of success on this claim because the regulations and cases upon which he relies all address noncitizens who are subject to a final order of removal. *See, e.g*., *Truong*, 2025 WL 2988357, at *1 (addressing an unlawful re-detention claim by a citizen of Laos who was ordered removed in December 2015, released after five months when the Government could not deport him to Laos, and later re-detained in July 2025). The detention and release of noncitizens who have been ordered removed is governed by 8 U.S.C. § 1231. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). Petitioner cites the regulations implementing § 1231; specifically, he points to 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3).[6]

Although an immigration judge has now ordered Petitioner's removal from the United States, his appeal to the BIA is pending and thus the removal order is not final. *See* 8 C.F.R. §

[6] For example, 8 C.F.R. § 241.13 is entitled: "Determination of whether there is a significant likelihood of removing a detained alien in the reasonably foreseeable future."

1241.1(a). Because there is no final order of removal, § 1231 and its attendant regulations do not apply. Instead, for noncitizens like Petitioner who are "already present in the United States," 8 U.S.C. § 1226 governs their detention and release. *See Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). In this case, Respondent acknowledges that "Petitioner was detained under 8 U.S.C. § 1226(a)." ECF No. 12 at 5.

The procedures for re-detaining a noncitizen under § 1226 are different from those that apply under § 1231 to a noncitizen who is subject to a final order of removal. As another court in this Circuit recently observed in the context of § 1226, "[a]fter a noncitizen has been released on bond, the Government has broad discretion to revoke the noncitizen's bond and re-detain the noncitizen." *Garcia v. Jamison*, No. CV 26-2214, 2026 WL 1122608, at *3 (E.D. Pa. Apr. 24, 2026).

That broad discretion is authorized by the plain language of the statute and the implementing regulations. Section 1226(b) provides that the "Attorney general *at any time may revoke* a bond or parole authorized under [§ 1226(a)], rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b) (emphasis added). Consistent with that broad grant of authority, the regulations further provide:

> When an alien who, having been arrested and taken into custody, has been released, such release *may be revoked at any time in the discretion* of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 C.F.R. §§ 236.1(c)(9), 8 C.F.R. 1236.1(c)(9) (emphasis added). "[A] plain reading of Section 1226 and its implementing regulations shows that noncitizens are not entitled to notice or a

hearing before their bond is revoked and they are re-detained." *Garcia*, 2026 WL 1122608, at *3 (citing *O.F.C. v. Almodovar*, 2026 WL 74262, at *6 (S.D.N.Y. Jan. 9, 2026).[7]

While § 1226 gives certain immigration officials broad discretion to revoke a noncitizen's release during removal proceedings, the noncitizen is not without recourse. "Upon the revocation of their bond, a noncitizen may seek a redetermination hearing before an immigration judge pursuant to 8 C.F.R. §§ 236.1(c)(10), 1236.1(c)(10)." *Garcia*, 2026 WL 1122608, at *3 (citing *In re Sugay*, 17 I. & N. Dec. 637, 639-40 (BIA 1981)); *see also* 8 C.F.R. § 1003.19(a) ("Custody and bond determinations made by the service pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236."). If not satisfied with the immigration judge's bond determination, the noncitizen may then appeal that ruling to the BIA. 8 C.F.R. § 1003.19(f).

As applied here, the record suggests that immigration officials exercised their broad discretion to take Petitioner into custody and revoke his release based on his December 2025 arrest by Philadelphia police officers.[8] Respondent argues that "Petitioner could have sought his

[7] *See also Singh v. Unknown Party*, No. CV-26-01685, 2026 WL 1839137, at *2 (D. Ariz. June 26, 2026) (noting "[m]any courts have recognized" that "the applicable statutory and regulatory provisions contemplate such detention [under § 1226(b)] without a pre-deprivation hearing"; citing cases).

[8] In a 1981 decision, the BIA stated that "where a previous bond determination has been made by an immigration judge, no change should be made . . . absent a change of circumstance." *Matter of Sugay*, 17 I & N Dec. 637, 640 (BIA 1981). Some courts have recognized this "longstanding [BIA] precedent" as creating an "important implicit limitation" on the broad discretion accorded to the Attorney General by § 1226(b). *See, e.g.*, *Singh v. Cerna*, No. Civ-26-1194-J, 2026 WL 2242498, at *4 (W.D. Okla. Aug. 4, 2026), *report and recommendation adopted*, 2026 WL 2364443 (W.D. Okla. Aug. 14, 2026) (citing cases); *but see Salvador F.-G. v. Noem*, No. 25-cv-0243, 2025 WL 1669356, at *8 (N.D. Okla. June 12, 2025) ("reject[ing] petitioner's claim that the DHS has no authority to revoke a bond issued by an immigration judge"). Even assuming (without deciding) that such a limitation is consistent with the language of § 1226(b) and the applicable regulations, it would not help Petitioner here. That is because an ICE officer—not an
(Continued on next page . . .)

release by requesting a bond redetermination hearing before an immigration judge [, but . . .] Petitioner did not do so."[9] ECF No. 12 at 5. There is no indication in the record that Petitioner requested but was refused a bond hearing before an immigration judge.[10]

Under these circumstances, Petitioner has failed to show a likelihood of success on his claim that DHS failed to comply with its own regulations in revoking his November 2021 release on recognizance. This is both because he relies on the wrong regulations in making his claim and because it appears unlikely that he will be able to prevail based on the applicable regulations under § 1226. Petitioner's failure to meet the essential likelihood-of-success element "is fatal to the issuance of a preliminary injunction." *Transcon. Gas Pipe Line Co., LLC*, 108 F.4th at 150.

**C. Conclusion**

For the foregoing reasons, it is respectfully recommended that Petitioner's Motion for a Preliminary Injunction (ECF No. 4) be denied. It is further recommended that this matter remain referred to the undersigned for further consideration of the merits of the Petition once Petitioner has had the opportunity to review and reply to the response filed by Respondent.

---

immigration judge—made the decision to release him in November 2021. *See supra* n. 2. Beyond that, the record suggests a change in circumstance had occurred—namely, Petitioner's December 2025 arrest by Philadelphia police.

[9] Respondents argue that the Petition should be dismissed because Petitioner failed to exhaust his administrative remedies. ECF No. 12 at 7-8. Because Petitioner has not had the opportunity to respond to this argument, the exhaustion issue is not addressed here.

[10] Petitioner has not yet had the opportunity to respond to the argument that he failed to request a hearing before an immigration judge regarding the revocation of his release. Because there may be additional facts of which the Court is not aware, this Report addresses only Petitioner's preliminary injunction motion and not the ultimate merits of his Petition.

**<u>Notice to the Parties</u>**

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties may, within fourteen (14) days, file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Signed on September 4, 2026.

BY THE COURT:

Peter E. Ormsby
United States Magistrate Judge